UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALISON M. PLAHITKO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:25-cv-00468-RLY-KMB |
| | ) |
| COMMUNITY HEALTH NETWORK, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT
AND AFFIRMATIVE AND OTHER DEFENSES**

Defendant Community Health Network, Inc., ("Community" or "Defendant"), by counsel, for its Answer and Affirmative and Other Defenses to Plaintiff Alison M. Plahitko's ("Plaintiff") Complaint and Demand for Jury Trial ("Complaint"), states the following:

**I. FACTUAL ALLEGATIONS**

1. Plahitko is a resident of Indianapolis, Marion County, Indiana.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 1 of the Complaint, and therefore denies same.**

2. Plahitko is a nurse and she is a former employee of Community Health. She worked for Community Health from October 2002 until she was wrongfully terminated on January 24, 2025. In her last position, Plahitko served as Community Health's Family and Medical Leave Act ("FMLA") Case Manager. Plahitko described her job title in her email signature line as "Alison Plahitko RN, BSN CHN Leave Team Case Manager/Benefits Administration."

**ANSWER:** **Defendant admits that it employed Plaintiff from October 2002 to**

1

**January 24, 2025, and that Plaintiff described herself as "Alison Plahitko RN, BSN CHN Leave Team Case Manager/Benefits Administration" in her email signature line at the time her employment was terminated on January 24, 2025. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff is currently a nurse, and therefore denies the same. Defendant denies that it wrongfully terminated Plaintiff's employment on January 24, 2025, and denies that Plaintiff was employed by Defendant as a "Family Medical Leave Act [] Case Manager."**

       3.     Plahitko is pursuing claims against Community Health for its violations of her rights under the FMLA. Specifically, Plahitko is pursuing Community Health for FMLA claims under 29 USC § 2615 (a)(2) and 29 USC § 2615(b)(2). With respect to her claims under 29 USC § 2615 (a)(2), Plahitko was fired by Community Health in a manner whereby Community Health discharged Plahitko and discriminated against her because Plahitko opposed and was continuing to oppose Community Health practices made unlawful by the FMLA. With respect to her claims under 29 USC § 2615 (b)(2), Plahitko was fired by Community Health in a manner whereby Community health discharged Plahitko and discriminated against her because Plahitko gave information and was about to give more information in inquiries and proceedings relating to rights of her coworkers (including employees with the initials E.F., D.E., M.S., N.G., A.S. and A.S. who applied or were applying to Community Health for FMLA leave). This also includes information Plahitko was giving to the U.S. Department of Labor ("DOL") as part of the DOL's inquiries into Community Health's changes to its FMLA program and policies.

      **ANSWER:**    **Defendant admits that Plaintiff purports to have claims arising under the Family Medical Leave Act but denies that it violated any such law or is liable for any relief claimed by Plaintiff. Defendant denies all remaining allegations contained within**

2

**Paragraph 3 of the Complaint.**

4.     Plahitko always did good work and met all of Community Health's reasonable expectations.

**ANSWER:    Defendant denies the allegations contained within Paragraph 4 of the Complaint.**

5.     At least through December 31, 2024, in her Case Manager position, Plahitko was the person for Community Health who reviewed and made the decisions regarding employee applications for FMLA leave and benefits. Upon information and belief, Plahitko decisionmaking [sic] authority for Community Health was such that Plahitko could potentially be deemed an individual who was a FMLA "employer" for potential liability purposes. See 29 USC § 2611(4)(A)(ii)(I). As such, it was critical for Plahitko to honestly and legally administer Community Health's employee FMLA leave and benefits program.

**ANSWER:    Defendant denies the allegations contained in Paragraph 5 of the Complaint, except that it admits that, in 2024, Plaintiff was one of three individuals employed by Defendant who were responsible for reviewing and making decisions regarding employee requests for leave under the Family Medical Leave Act.**

6.     In approximately the late Summer 2024, Community Health advised Plahitko and the other members of her office that Community Health was going to outsource its FMLA administration to a company called "UNUM," effective January 1, 2025. Plahitko's Community Health supervisors assured Plahitko that her employment would continue after the switch to UNUM.

**ANSWER:    Defendant is without knowledge or information sufficient to form a**

**belief as to the truth of the allegations contained within Paragraph 6 of the Complaint, and therefore denies same.**

7. In later 2024, Plahitko's Community Health supervisors told Plahitko that Unum was going to make changes to the method by which Community Health calculated an employee's eligibility for FMLA leave - specifically, the method used to calculate the 12 month period used to evaluate an employee's FMLA eligibility. Through Plahitko's tenure in the FMLA Leave Case Manager job, Community Health had used a fixed year for its FMLA year calculation. Working with and through UNUM, Community Health decided to change its FMLA year calculation to a "rolling backward" year. This included the following two changes:

   a. To re-set the FMLA calculation, Community Health used January 1, 2025 as the date to deem every FMLA-eligible employee to have a full twelve (12) weeks of available FMLA leave in 2025, regardless of the timing or the weeks of FMLA leave the employee may have taken in 2024; and

   b. After the January 1, 2025 re-set, Community Health would calculate an employee's FMLA eligibility hours (1,250 or more required) worked by counting hours worked in the twelve months immediately preceding the date an employee began taking FMLA leave - a rolling 12-month period measured backward.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within the first sentence of Paragraph 7 of the Complaint, and therefore denies same. Defendant denies that it employed Plaintiff as an "FMLA Leave Case Manager." Defendant admits that, effective January 1, 2025, eligible, Community employees received a new, full bank of hours available to them for leave under the Family Medical Leave Act. Defendant admits that, effective March 26,**

**2025, it changed its 12-month period for leave under the Family Medical Leave Act to a rolling 12-month period measured backwards from the date an employee uses leave under the Family Medical Leave Act. Defendant denies all remaining allegations contained within Paragraph 7 of the Complaint.**

8. The FMLA requires an employer to provide at least 60 days notice to its employees if the employer changes its FMLA leave year or eligibility calculation to another alternative. See 29 CFR § 825.200(d)(1) ("an employer wishing to change to another alternative [for calculating employees' FMLA leave eligibility] is required to give at least 60 days notice to all employees, and the transition must take place in such a way that the employees retain the full benefit of the 12 weeks of leave under whichever method afford the greatest benefit to the employee.")

**ANSWER:** **Defendant denies the allegations contained within Paragraph 8 of the Complaint.**

9. Community Health decided that it was not going to provide the FMLA-required 60 day Notice [sic] of changes made to its FMLA eligibility year by UNUM that were becoming effective January 1, 2025.

**ANSWER:** **Defendant denies the allegations contained within Paragraph 9 of the Complaint.**

10. In fact, Community Health did not provide its employees 60 or more days Notice [sic] of the changes it made through UNUM to its FMLA leave year or FMLA eligibility rules.

**ANSWER:** **Defendant denies the allegations contained within Paragraph 4 of the Complaint.**

11. Community Health made Plahitko aware of its plan to change its FMLA leave year and eligibility rules by early December 2024. Community Health also made Plahitko aware that Community Health did not plan to provide 60 or more days' Notice [sic] to its employees of the FMLA calendar and eligibility changes it was implementing on January 1, 2025.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within the first sentence of Paragraph 11 of the Complaint, and therefore denies same. Defendant denies the allegations contained within the second sentence of Paragraph 11 of the Complaint.**

12. At this time, Plahitko had multiple employees who had applied for FMLA leave that was scheduled to occur in early 2025. These employees at issue had been told they were eligible to take FMLA. In particular, Plahitko had several Community Health coworkers who applied for FMLA leave to protect their employment during maternity leave. This includes employees with the initials E.F. and D.E. Plahitko also advocated for FMLA applicants with the initials M.S., N.G., A.S. and A.S. (different person).

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 12 of the Complaint, and therefore denies same.**

13. As an example, E.F. worked a part time schedule that made the question of her FMLA eligibility a very close call (e.g., she worked just over 1,250 hours in the 12 months before she applied for FMLA leave). Under the calculation method used by Community Health in 2024, E.F. was eligible for her maternity leave scheduled to begin in 2025. With the January 1, 2025 UNUM changes to the FMLA leave year and eligibility calculation, E.F. was unlikely and/or would not be eligible for FMLA leave based upon 1,250 hours worked from the date

leave began and/or use of the January 1st re-set date. E.F. and other Community Health employees were relying upon Community Health's approval (or pre-approval) of FMLA leave. Community Health was violating the FMLA and harming its employees by making its January 1, 2025 changes to the FMLA calendar year and eligibility calculation rules without first providing 60 or more days Notice [sic] of the FMLA changes to the employees. 29 CFR § 825.200(d)(1).

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations related to the purported individual identified as "E.F.," and therefore denies same. Defendant denies all remaining allegations contained within Paragraph 13 of the Complaint.**

14. Similarly, M.S., N.G., A.S. and A.S. were affected by Community Health's January 1, 2025 change to use of a different FMLA year to count 12 FMLA weeks based upon Community Health's failure to provide 60 days notice.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations related to the purported individuals identified as "M.S., N.G. A.S. and A.S.," and therefore denies same. Defendant denies all remaining allegations contained within Paragraph 14 of the Complaint.**

15. Plahitko expressly protested and opposed Community Health's unlawful FMLA actions. Plahitko opposed Community Health's practices made unlawful by the FMLA in at least the following ways:

    a. Plahitko advised employees, including E.F. and D.E., that Community Health was making changes to its FMLA eligibility rules and calendar and that the maternity leave E.F. and D.E. had been already approved for FMLA protection may not, under the UNUM changes, be FMLA-protected in 2025;

7

  b. Plahitko reported Community Health's FMLA changes to the U.S. Department of Labor via email and telephone calls, including emails and telephone calls to U.S. Department of Labor investigator Chris Huber;

  c. Plahitko communicated with, protested to and opposed the FMLA changes in communications with Community Health's attorneys, both in house and outside attorneys for Community Health;

  d. Plahitko communicated with, protested to and opposed the FMLA changes in communications with Community Health's human resource department managers;

  e. Plahitko communicated with, protested to and opposed the FMLA changes in communications with her Community Health managers, including direct supervisors.

**ANSWER:   Defendant denies that it violated the Family Medical Leave Act. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraphs 15(a) and 15(b) of the Complaint, and therefore denies same. Defendant denies the allegations contained within Paragraph 15(c) of the Complaint. Defendant further objects to the allegations contained within Paragraph 15(c) of the Complaint to the extent Plaintiff attempts to discuss any alleged communications protected by the attorney-client privilege. With respect to Paragraphs 15(d) and 15(e) of the Complaint, Defendant admits that Plaintiff opposed changes Defendant made to its Family Medical Leave Act administration; however, Defendant denies that such changes violated the Family Medical Leave Act.**

  16. As early as December 9, 2024, Plahitko forwarded an email to her manager named Teresa Donaldson detailing Plahitko's conversations with Chris Huber of the U.S.

Department of Labor about concerns, FMLA-violations, and her efforts to protect her coworkers' FMLA rights.

**ANSWER:** **Defendant admits that, on December 9, 2024, Plaintiff forwarded an email to her manager, Teresa Donaldson, purportedly from an individual named Christopher Huber with a U.S. Department of Labor email address. Defendant denies the remaining allegations contained within Paragraph 16 of the Complaint.**

17. In addition to assistance to employees applying for FMLA protections – including E.F. and D.E. - Plahitko specifically sent an email to E.F. and E.F.'s manager, Karrah Poole, detailing the harm that could be caused to E.F. by the coming changes to FMLA leave rules. This email was sent on or about December 24, 2024. Plahitko learned that this email had been circulated to Community Health's nursing managers by January 6, 2025.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 17 of the Complaint, and therefore denies same.**

18. On or about December 12, 2024, Plahitko sent an email to a Community Health in-house attorney and Plahitko's direct supervisor detailing the harm that would occur if Community Health failed to notify or provide Notice [sic] to employees of the changes to the FMLA eligibility calculation method.

**ANSWER:** **Defendant denies the allegations contained within Paragraph 18 of the Complaint. Defendant further objects to the allegations contained within Paragraph 18 of the Complaint to the extent Plaintiff attempts to discuss an alleged communication protected by the attorney-client privilege.**

19.  Community Health retaliated against Plahitko for her opposition to Community Health's violations of the FMLA - including Community Health's failure to issue Notice [sic] of FMLA changes to employees - and the harm that would befall Community Health's employees.

**ANSWER:  Defendant denies the allegations contained within Paragraph 19 of the Complaint.**

20.  On January 10, 2025, Plahitko was invited to and attended a meeting. Plahitko was not advised about the reason for the meeting. When the January 10, 2025 meeting began, Plahitko learned the meeting was about her. Community Health managers, including Teresa Donaldson, Sylvia Burnett and a manager named Joe Anderson, began to specifically reprimand and criticize Plahitko for making the Community Health FMLA changes known to employees and managers (including E.F. and her manager) and for Plahitko's efforts to oppose Community Health's FMLA violations. The Community Health managers ended the meeting by promising a meeting the next week during which Plahitko would be told her expectations of her job going forward and Community Health would give a written summary of that meeting and written instructions to Plahitko, which Community Health would ask Plahitko to sign. That meeting never occurred. That writing was never presented to Plahitko.

**ANSWER:  Defendants admits the allegations contained within the first sentence of Paragraph 20 of the Complaint. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within the second and third sentences of Paragraph 20, and therefore denies same. With respect to the fourth sentence of Paraph 20, Defendant admits that, on January 10, 2025, Plaintiff attended a meeting with Teresa Donaldson, Sylvia Burnett, and Joe Anderson regarding concerns Defendant had with Plaintiff's lack of professionalism and her efforts to disseminate false**

10

information and other confidential Human Resources information to Defendant's employees. Defendant denies all remaining allegations contained within the fourth sentence of Paragraph 20. Defendant admits the allegations contained within the fifth, sixth, and seventh sentences of Paragraph 20 except that it denies Plaintiff was promised that she would be told the expectations of her job going forward.

21. On January 24, 2025, Community Health fired Plahitko in retaliation for Plahitko's efforts to help her coworkers with FMLA leave and Plahitko's efforts to oppose Community Health's practices that violated the FMLA. This opposition included Plahitko's many protests about the FMLA required Notice [sic] Community Health would not provide about its changes to its FMLA program, along with Plahitko's protests to Community Health, the U.S. Department of Labor and Community Health's attorneys. This opposition also included warnings Plahitko provided to coworkers applying for FMLA leave (e.g., E.F. and D.E.) and the harm that was approaching from the unannounced changes to Community Health's FMLA leave program effective January 1, 2025.

**ANSWER:** Defendant admits that it terminated Plaintiff's employment on January 23, 2025. Defendant denies the remaining allegations contained within Paragraph 21 of the Complaint.

22. It may have done so afterward, but Community Health had still not complied with 29 CFR § 825.200(d)(1) and issued 60 day Notice [sic] to employees of the changes in its FMLA leave rules before Plahitko was fired on January 24, 2025.

**ANSWER:** Defendant denies the allegations contained within Paragraph 22 of the Complaint except that it admits that Plaintiff's employment was terminated on January 24, 2025.

23. Community Health cannot claim, that it fired Plahitko for any reason other than Plahitko's express efforts to oppose Community Health's FMLA violations and the harms cause by lack of FMLA-required Notice [sic] coupled with January 1, 2025 changes to its FMLA program.

**ANSWER:** **Defendant denies the allegations contained within Paragraph 23 of the Complaint.**

24. All of Community Health's reasons for harming and, ultimately, firing Plahitko from employment are illegal and violate the FMLA. Plahitko has been significantly harmed by Community Health's discriminatory and retaliatory actions adverse to her employment. Plahitko is seeking all lost wages and benefits, all liquidated damages, reinstatement and/or front pay and benefits, payment of all of her reasonable attorney's fees, costs and expenses, plus any equitable relief which would make her whole.

**ANSWER:** **Defendant denies the allegations contained within Paragraph 24 of the Complaint and denies that Plaintiff is entitled to any of the relief requested or otherwise.**

## II. JURISDICTION AND VENUE

25. Plahitko's Complaint raises federal questions of law and this Court has jurisdiction over the subject matter of this complaint pursuant to 28 USC § 1331 and under 29 USC § 2611 et seq.

**ANSWER:** **Defendant admits that Plaintiff purports to have claims arising under the Family Medical Leave Act but denies that it violated any such laws or is liable for any relief claimed by Plaintiff. Defendant admits that the Court has subject matter jurisdiction.**

26. This Court is the appropriate venue for this cause of action as Plahitko worked for Community Health in Indianapolis, Marion County, Indiana. 28 USC § 1391.

**ANSWER:** **Defendant admits the allegations contained in Paragraph 26 of the Complaint, except that it denies that any events occurred that result in Defendant being liable for any relief claimed by Plaintiff.**

### III. FAMILY AND MEDICAL LEAVE ACT CLAIMS

27. Plahitko incorporates herein by reference paragraphs 1 - 26 above.

**ANSWER:** **Defendant incorporates its answers to the allegations in Paragraphs 1 through 26 of the Complaint above as if fully set forth herein in response to Paragraph 27 of the Complaint.**

28. Whether required to do so with her particular FMLA retaliation claims, by way of this Complaint, Plahitko asserts that she is a covered and eligible employee under the FMLA who worked at least one thousand two hundred and fifty (1,250) hours in the twelve (12) months preceding her initiation of this retaliation action and her January 24, 2025 termination from employment.

**ANSWER:** **Defendant admits that Plaintiff worked at least one thousand two hundred and fifty (1,250) hours in the twelve (12) months preceding the termination of her employment on January 24, 2025. Defendant denies the remaining allegations contained within Paragraph 28 of the Complaint.**

29. Community Health is an "employer" as that term is defined under the FMLA. Community Health had far more than fifty (50) employees within a seventy-five (75) mile radius

13

of the Indianapolis, Indiana offices from which Plahitko performed her work for Community Health.

**ANSWER:** **Defendant denies that Plaintiff performed work at any certain Community office in Indianapolis, Indiana as Plaintiff was a remote employee. Defendant admits that it is an employer as defined under the Family Medical Leave Act.**

30. As described above, Plahitko is pursuing claims against Community Health for its violations of her rights under the FMLA. Specifically, Plahitko is pursuing Community Health for FMLA claims under 29 USC § 2615 (a)(2) and 29 USC § 2615(b)(2). With respect to her claims under 29 USC § 2615 (a)(2), Plahitko was fired by Community Health in manner whereby Community health discharged Plahitko and discriminated against her because Plahitko opposed and was continuing to oppose Community Health practices made unlawful by the FMLA. With respect to her claims under 29 USC § 2615 (b)(2), Plahitko was fired by Community Health in manner whereby Community health discharged Plahitko and discriminated against her because Plahitko gave information and was about to give more information in inquiries and proceedings relating to rights of her coworkers (including employees with the initials E.F., D.E., M.S., N.G., A.S. and A.S.) who were applying to Community Health for FMLA leave) [sic]. This includes information Plahitko was giving to the U.S. Department of Labor ("DOL") as part of the DOL's inquiries into Community Health's changes to its FMLA program and policies.

**ANSWER:** **Defendant admits that Plaintiff purports to have claims arising under the Family Medical Leave Act but denies that it violated any such law or is liable for any relief claimed by Plaintiff. Defendant denies all remaining allegations contained within Paragraph 30 of the Complaint.**

31. Community Health wrongfully discriminated against and retaliated against Plahitko for opposing conduct made unlawful by the FMLA and for giving information in inquiries and proceedings related to efforts by fellow employees who were applying for FMLA leave. Plahitko was the person assigned to administer and decide employee FMLA requests. Plahitko refused to violate the FMLA, as Community Health had dictated, and instead opposed the unlawful conduct and informed the employees who would be harmed by Community Health's conduct that violated the FMLA, including the employees with the initials E.F. and D.E. Moreover, Community Health wrongfully discriminated against and retaliated against Plahitko for providing information to the U.S. Department of Labor during its inquiries into the complaints from Plahitko and the legality of Community Health's changes to its FMLA policies and practices.

**ANSWER: Defendant denies the allegations contained within Paragraph 31 of the Complaint.**

32. As a direct and proximate result of Community Health's conduct, Plahitko has sustained substantial economic losses, including, but not limited to, career damage, past and future loss of wages, and other economic benefits. By way of this Complaint, for Community Health's violations of the FMLA, Plahitko is seeking all available damages, including, but not limited to, liquidated damages, back pay and benefits, front pay and benefits, all of her attorney's fees, costs and expenses, reinstatement, and any other damages necessary to remedy Community Health's violations of Plahitko's rights under the FMLA.

**ANSWER: Defendant denies the allegations contained within Paragraph 32 of the Complaint and denies that Plaintiff is entitled to any of the relief requested or otherwise.**

33. Wrongful termination of Plahitko's employment is prohibited by 29 U.S.C. § 2615.

**ANSWER:   The allegations contained within Paragraph 33 of the Complaint are conclusions of law to which no response is required, but to the extent Paragraph 33 contains allegations of fact, Defendant denies that it wrongfully terminated Plaintiff's employment.**

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alison M. Plahitko respectfully requests that the Court enter judgment against Defendant Community Health Network, Inc. and issue all available relief to Plahitko, including, but not limited to, the following:

1. All damages available under the FMLA, including all back pay and benefits, all available liquidated damages, reinstatement and/or front pay and benefits, and payment of all reasonable attorney's fees, costs and expenses;

2. Costs;

3. Pre-judgment interest, if available; and

4. Any and all other relief just and proper in the premises

**ANSWER:   Defendant denies that Plaintiff is entitled to any of the relief requested or otherwise.**

## **DEFENDANT'S AFFIRMATIVE AND OTHER DEFENSES**

For its affirmative and other defenses to the Complaint, Defendant states as follows:

1. Plaintiff's claims are barred, in whole or in part, for failure to state a claim upon which relief may be granted.

2. Plaintiff's claims are barred because all employment decisions made with regard to Plaintiff were at all times motivated by legitimate, non-retaliatory, and lawful factors, and Defendant at no time acted in an unlawful manner in connection with any decision regarding Plaintiff.

3. The claims asserted in Plaintiff's Complaint are barred because, to the extent that any alleged retaliation was a motivating factor in any action taken with respect to Plaintiff, the same action would have been taken in the absence of such motivating factor.

4. Plaintiff was under an affirmative obligation to mitigate her damages by seeking other employment, and to the extent that she has failed to make reasonable efforts to do so, her damages should be barred or limited.

5. Plaintiff's claims for liquidated damages are barred because any alleged act or omission by Defendant was taken or made in good faith within the meaning of 29 U.S.C. § 2617(a)(1)(A)(iii), and Defendant had reasonable grounds for believing that any alleged act or omission was not a violation of the Family Medical Leave Act.

6. Defendant reserves the right to assert additional defenses not presently known but which become apparent during the court of investigation or discovery.

Respectfully submitted,

*/s/ Phillip J. Jones*
Charles E. Bush II, Attorney No. 31252-64
Phillip J. Jones, Attorney No 36859-53
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200
Phone: (317) 236-2100
Fax: (317) 236-2219
*Charles.Bush@icemiller.com*
*Phillip.Jones@icemiller.com*

*Attorneys for Defendant Community Health Network, Inc.*

## CERTIFICATE OF SERVICE

    I hereby certify that on May 13, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Robert P. Kondras, Jr.<br>
Attorney No. 18038-84<br>
100 Cherry Street<br>
Terre Haute, IN 47807<br>
(812) 232-9691<br>
kondras@hkmlawfirm.com

                                              */s/ Phillip J. Jones*
                                              Phillip J. Jones

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200
Phone: (317) 236-2100
Fax: (317) 236-2219
*charles.bush@icemiller.com*
*phillip.jones@icemiller.com*